UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MEAGAN ANN RYAN,

              Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

              Defendant.

Case No. C18-5087 RJB

**ORDER AFFIRMING DEFENDANT'S DENIAL OF BENEFITS**

## I.    INTRODUCTION

Plaintiff Meagan Ann Ryan seeks review of the denial of her applications for supplemental security income and child disability insurance benefits. Plaintiff contends the Administrative Law Judge ("ALJ") erred by (1) improperly assessing the opinions of state agency consultants John Gilbert, Ph.D. and Michael Regets, Ph.D. that Plaintiff could only perform one- to two-step tasks, and that her concentration, persistence, and pace would periodically wane in response to her subjective perception of pain; (2) improperly discounting the opinions of Sharon Ledesma, Ph.D.; and (3) improperly discounting the opinions of Lynn Staker, M.D. Pl. Op. Br. (Dkt. # 11) at 1. As discussed below, the Court AFFIRMS the final decision of Defendant Nancy A. Berryhill (the "Commissioner") and DISMISSES the case with prejudice.

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 1

## II. BACKGROUND

### A. Procedural History

Plaintiff filed for supplemental security income benefits on August 12, 2011, and for child disability benefits on September 6, 2011. Administrative Record ("AR") at 68-69. On both applications, she alleged a disability onset date of November 11, 2010. *See id* at 70, 82. Her claims were denied initially and on reconsideration. *See id.* at 80-81, 92-93, 109, 124.

Following a hearing, ALJ Virginia Robinson denied Plaintiff's claims on October 12, 2012. *See id.* at 21-31. The Appeals Council denied review on January 23, 2014. *Id.* at 1. Plaintiff timely filed a complaint in the U.S. District Court for the Western District of Washington challenging the ALJ's decision. *See id.* at 996-97. The parties subsequently stipulated to remand and, on August 14, 2014, Judge Benjamin Settle remanded the matter with instructions to "reevaluate all of the source opinions of record, including the opinions of the State agency psychological consultants and Lynn Staker, M.D., and give reasons for the weight assessed; reassess Plaintiff's residual functional capacity, including the frequency of Plaintiff's need to alternate positions; reassess Plaintiff's credibility; and, if warranted, obtain supplemental evidence from a vocational expert." *Id.* at 1001-02.

The ALJ conducted a second hearing on July 16, 2015. *See id.* at 934. On February 11, 2016, ALJ Robinson issued her decision, again denying Plaintiff's claims for benefits. *See id.* at 902-26.

### B. The ALJ's Decision

Utilizing the five-step disability evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff was disabled from November 11, 2010, through March 31, 2012. *Id.* at 914. The ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since

November 11, 2010; (2) had the following severe impairments: left heel fracture, status post lumbar fusion surgery, depression, and pain disorder; and (3) had no impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 907. ALJ Robinson determined that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, except that she could stand or walk for a total of less than two hours in an eight-hour work day; had to be able to elevate her left foot to waist height for a total of about four hours in an eight-hour work day; was limited to unskilled work that required only simple, work-related decisions; and could have superficial contact with the public, coworkers, and supervisors. *Id.* at 909.

Based on Plaintiff's RFC, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform (she had no relevant past work). *Id.* at 913. Plaintiff was therefore "under a disability, as defined by the Social Security Act, from November 11, 2010 through March 31, 2012." *Id.* at 914.

The ALJ also found, however, that Plaintiff's disability ended on April 1, 2012. *Id.* Plaintiff had not developed any new impairments since April 1, 2012, so her severe impairments remained the same. *Id.* The ALJ found that there had been an increase in Plaintiff's RFC due to medical improvement, which occurred as of April 1, 2012. *Id.* at 915. As of that date, Plaintiff had the capacity to perform light work. *Id.* She was no longer limited in her ability to stand or walk, and no longer needed the ability to elevate her left foot during the workday. *See id.* Plaintiff's cognitive and social limitations remained the same: she was "limited to unskilled work that requires only simple, work related decisions," and could have "superficial contact with the public, coworkers, and supervisors." *Id.*

Based on Plaintiff's increased RFC, the ALJ determined that Plaintiff could perform

work as an office helper, electrical accessories assembler, or housekeeper. *Id.* at 924. If an additional limitation was added requiring "a sit/stand option that would allow the claimant to alternate between sitting and standing but not be off task more than 10% of the time," Plaintiff could perform work as an office helper, small product assembler, and food/beverage order clerk. *Id.* at 924-25. If Plaintiff was further limited to sedentary work, she could still perform work as a food/beverage order clerk, charge account clerk, or document preparer. *Id.* at 925. Therefore, Plaintiff's disability ended as of April 1, 2012. *Id.*

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 885. Plaintiff filed the present complaint challenging the ALJ's determination that she was not disabled as of April 1, 2012.

### III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

Plaintiff raises three issues in her challenge of the Commissioner's decision. First, Plaintiff alleges the ALJ misevaluated the opinions of State Agency medical consultants John

Gilbert, Ph.D., and Michal Regets, Ph.D. Pl. Op. Br. at 1. Second, Plaintiff alleges the ALJ erred in rejecting the opinion of examining doctor Sharon Ledesma, Ph.D. *Id.* Third, Plaintiff alleges the ALJ erred in rejecting the opinion of examining doctor Lynn Staker, M.D. *Id.* The Commissioner disputes each of Plaintiff's alleged errors. Def. Resp. Br. (Dkt. # 14) at 2-10.

**A.    The ALJ Did Not Err in Assessing the Opinions of Dr. Gilbert and Dr. Regets**

Dr. Gilbert reviewed Plaintiff's medical records as part of the initial disability determination. *See* AR at 75-76, 78-79, 87-88, 90-91. Among other things, he opined that Plaintiff "can persist for [two] hours and can perform [one]-[two] step tasks. No [sic] expected to complete more complex tasks. [Concentration, persistence, and pace] may periodically wane in response to subjective perception of pain." *Id.* at 78, 90.

Dr. Regets reviewed Plaintiff's medical records as part of the reconsideration of the disability determination. *See id.* at 102-03, 105-07, 117-18, 120-22. Dr. Regets gave the same opinion as Dr. Gilbert regarding Plaintiff's ability to perform one to two steps tasks and maintain concentration, persistence, and pace. *Id.* at 107, 122.

The ALJ gave "partial weight" to Dr. Gilbert's opinion, and "little weight" to Dr. Regets's opinion. *Id.* at 923. Rather than adopt the one-to-two-step task limitation, the ALJ found that Plaintiff was limited to "unskilled work that requires only simple, work related decisions." *Id.* at 915. Further, six of the seven jobs the ALJ identified that Plaintiff could perform required a greater level of reasoning than a one-to-two step task limitation would allow. *See id.* at 924-25 (listing six jobs requiring reasoning level two, as defined by the Dictionary of Occupational Titles, and one job requiring reasoning level one); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002-03 (9th Cir. 2015) (finding a conflict between an RFC limiting the claimant to performing one- and two-step tasks, and jobs requiring reasoning level two).

Setting aside the fact that this still leaves one job that would fall within the one- to two-step task limitation, the Court first looks at whether the ALJ properly discounted the opinions of Dr. Gilbert and Dr. Regets. An ALJ may reject the opinion of a non-examining doctor by referring to specific evidence in the record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

### 1. The ALJ Did Not Err in Discounting Dr. Gilbert's Opinions

The ALJ gave two reasons for giving only partial weight to Dr. Gilbert's opinions. *See* AR at 923. First, Ms. Ryan's mental health claims were contradicted by the fact that she did not seek mental health treatment until seven months after her alleged disability onset date. *Id.* Second, Dr. Gilbert's opinions were inconsistent with the medical record, which showed minimal mental status findings. *Id.*

The ALJ's first reason for rejecting Dr. Gilbert's opinions is not valid. The Court has repeatedly stated that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). The mere fact that Plaintiff did not seek treatment for her mental health issues until seven months after her alleged disability onset date is not a substantial basis for rejecting Dr. Gilbert's assessment of Plaintiff's condition. *See Nguyen*, 100 F.3d at 1465.

The ALJ's second reason, however, withstands scrutiny. As the ALJ noted, Plaintiff's medical records showed only minimal mental status findings. *See* AR 920-21, 923. Plaintiff saw Michael Jackson, ARNP, for mental health counseling on a monthly basis from June 28, 2011, until August 23, 2012. *See id.* at 853-867. As the ALJ indicated, Mr. Jackson's findings during that time were largely unremarkable, and primarily concerned issues surrounding custody of

Plaintiff's first child. *See id.* at 853-67, 912-13. Plaintiff sought no further mental health treatment after August 2012, and her other medical records showed at most minimal mental health issues. *See id.* at 920, 1188 ("[Plaintiff] denies being depressed."), 1192 (same), 1196 (same), 1204 ("Affect is interactive and there are no obvious signs of depression[,] anxiety or agitation."). The ALJ reasonably interpreted this evidence as showing a lack of mental functional restrictions. As a result, Dr. Gilbert's cognitive limitation opinion was not supported by substantial evidence in the record, and the ALJ did not err in discounting it. *See Thomas*, 278 F.3d at 957.

### 2. The ALJ Did Not Err in Rejecting Dr. Regets's Opinions

The ALJ also gave two reasons for rejecting Dr. Regets's opinions. *See* AR at 923. ALJ Robinson first reasoned that Dr. Regets's opinions were inconsistent with the overall record. *Id.* The same reasoning applies here as it did to the ALJ's analysis of Dr. Gilbert's opinion: the ALJ could not reject Dr. Regets's opinion due to Plaintiff's failure to immediately seek treatment, but could reject it because of a lack of mental status findings in the record that would support mental functional limitations. *See supra* Part III.A.1.

The ALJ also rejected Dr. Regets's opinions because they were based on Plaintiff's subjective pain complaints, which the ALJ found not credible. *See* AR at 923. "If a [doctor's] opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the [doctor's] opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). Dr. Regets indicated that Plaintiff had cognitive limitations that were caused by her "subjective perception of pain." *See id.* at 107, 122. However, the ALJ found that Plaintiff's subjective pain reports were not credible after April 1, 2012. *See id* at 916-20. Plaintiff has not challenged the

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 7

ALJ's rejection of her symptom testimony. *See* Pl. Op. Br. at 1. Because Dr. Regets admittedly stated that his cognitive limitation opinion was based on Plaintiff's "subjective" pain complaints, and the ALJ properly rejected those complaints, the ALJ therefore did not err in rejecting Dr. Regets's opinions for being too heavily based on Plaintiff's complaints.

### 3. The ALJ's Errors Were Harmless

Although the ALJ included erroneous reasons in her rejection of the opinions of Dr. Gilbert and Dr. Regets, Plaintiff has failed to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ gave at least one valid reason for rejecting each doctor's opinions, so her inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle*, 533 F.3d at 1162-63 (holding that where an ALJ provides at least one valid reason supported by substantial evidence for discounting a claimant's testimony, the inclusion of other erroneous reasons is harmless).

**B. The ALJ Did Not Err in Discounting the Opinions of Dr. Ledesma**

Dr. Ledesma examined Plaintiff on November 21, 2011. AR at 734. She did not review any records or conduct any psychological testing as part of her examination. *See id.* at 734, 737. Dr. Ledesma diagnosed Plaintiff with major depressive disorder, moderate, recurrent; and pain disorder associated with psychological factors and a general medical condition. *Id.* at 737-38. Dr. Ledesma opined that Plaintiff "currently does not appear to have the ability to withstand the pressures associated with day-to-day work activity and she may not be able to carry out work-

1 related activities with adequate pace and perseverance." *Id.* at 737. Dr. Ledesma further

2 concluded that Plaintiff does not have the ability to interact appropriately with others, including

3 coworkers and supervisors, and could not maintain a regular work schedule or complete a normal

4 work day without interruptions due to her mental health issues. *Id.*

5      ALJ Robinson gave two reasons for rejecting Dr. Ledesma's opinions. *See* AR at 923.

6 First, Dr. Ledesma's opinions were "equivocal, and reflect[ed] few specific functional

7 restrictions. *Id.* Second, Dr. Ledesma's opinions were not consistent with the overall medical

8 record. *Id.* In particular, Plaintiff sought only minimal mental health treatment, and most of the

9 mental health findings were unremarkable. *Id.*

10      Plaintiff argues that the ALJ erred in rejecting Dr. Ledesma's opinions. "[T]he opinion

11 of an examining doctor, even if contradicted by another doctor, can only be rejected for specific

12 and legitimate reasons that are supported by substantial evidence in the record." *Lester v.*

13 *Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing *Andrews*, 53 F.3d at 1043).

14      1.    <u>The ALJ Erred in Finding That Dr. Ledesma's Opinions Were Equivocal</u>

15      The ALJ's determination that Dr. Ledesma's opinions were equivocal is not a specific

16 and legitimate reason supported by substantial evidence in the record. While the ALJ need not

17 accept an examining doctor's equivocal opinion, *see Khal v. Berryhill*, 690 F. App'x 499, 501

18 (9th Cir. 2017), an ALJ may not reject an opinion based on an inaccurate depiction of that

19 opinion, *see Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1988). Dr. Ledesma initially

20 equivocated that Plaintiff "currently does not appear" to be able to handle the pressures of daily

21 work, but then she firmly stated that Plaintiff "does not have the ability to" interact appropriately

22 with coworkers and supervisors, and "could not be expected to" maintain a regular work

23 schedule or complete a normal work day without interruptions from her psychological

symptoms. *See* AR at 737. These are clear functional restrictions, and the ALJ erred in rejecting them as equivocal or non-specific.

2. The ALJ Did Not Err in Finding That Dr. Ledesma's Opinions Were Inconsistent With the Overall Medical Record

The ALJ did not err in rejecting Dr. Ledesma's opinions as inconsistent with the overall medical record. Inconsistency with the medical evidence is a specific and legitimate reason to reject a doctor's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a doctor's opinion may properly be rejected where it is inconsistent with other medical evidence in the record). The ALJ's reasoning here was the same as it was for the opinions of Dr. Gilbert and Dr. Regets. *See* AR at 923. The Court's analysis is the same, as well, and the ALJ accordingly did not err in rejecting Dr. Ledesma's opinions on this basis. *See supra* Part III.A.1.

3. The ALJ's Errors Were Harmless

Once again, the Court finds that the ALJ did not harmfully err. Although the ALJ included an erroneous reason in her rejection of Dr. Ledesma's opinions, she also included a valid reason. As a result, any error was inconsequential to the ultimate disability determination, and therefore harmless. *See Molina*, 674 F.3d at 1115; *Carmickle*, 533 F.3d at 1162-63.

**C.    The ALJ Did Not Err in Rejecting the Opinions of Dr. Staker**

Dr. Staker issued two opinions addressing Plaintiff's physical limitations. *See* AR at 534-35, 546-47, 826-30. He first saw Plaintiff on June 22, 2011. *See id.* at 546-47. At that time, Dr. Staker diagnosed Plaintiff with burst fractures at L2 and L3, postoperative with rod fixation; and posttraumatic arthritis of the left foot and ankle. *Id.* at 547. He then opined that Plaintiff "needs at least a year of recovery" from her injuries, and would not be employable over the next year because she would "have difficult [sic] doing full time even sedentary work." *Id.*

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 10

Dr. Staker saw Plaintiff again on May 9, 2012. *See id.* at 826-28. He diagnosed Plaintiff with "significant compression fractures considered to be somewhat unstable of L2 and L3 postoperative fusion of T12 through L4"; posttraumatic arthritis in her ankle; heel fracture; and postoperative ankle fusion. *Id.* at 828. Dr. Staker noted that Plaintiff's "situation is not entirely medically stable" but attributed that to the fact that she was only a few months removed from ankle fusion surgery, which takes up to a year to consolidate. *Id.* Based on his diagnoses, Dr. Staker opined that Plaintiff could lift a maximum of 10 pounds, and could not frequently lift or carry anything because she was not entirely stable. *Id.* at 829. Dr. Staker opined that Plaintiff "is limited in her ability to do any prolonged walking, standing, lifting, bending, or sitting and would have difficulty becoming employable over this next year . . . ." *Id.* at 828.

The ALJ accepted Dr. Staker's opinions as they related to Plaintiff's condition prior to April 1, 2012. *See id.* at 922. After that date, however, ALJ Robinson determined that Dr. Staker's opinions were inconsistent with the medical record. *Id.* at 922-23. The ALJ further concluded that Dr. Staker's May 9, 2012 opinions relied too heavily on Plaintiff's discredited pain complaints; were contradicted by Plaintiff's daily activities; and were internally inconsistent. *See id.*

1. <u>The ALJ Did Not Err in Finding That Dr. Staker's Opinions Were Inconsistent with the Overall Medical Record</u>

ALJ Robinson reasonably interpreted the medical evidence when she concluded that it contradicted Dr. Staker's opinions after April 1, 2012. On March 7, 2012, Plaintiff's podiatrist, Ryan Downey, M.D., reported that Plaintiff was "[a]ble to walk full weightbearing out to her car" after Dr. Downey agreed to refill her oxycodone prescription. AR at 849, 916. By April 27, 2012, Plaintiff was able to bear full weight on her operative foot with normal shoes. *Id.* at 846, 917. The pain over her ankle joint had resolved by July 16, 2012, and her range of motion was

within normal limits. *Id.* at 842, 917. By January 3, 2014, Plaintiff reported to Dr. Downey that she had "returned to normal activity." *Id.* at 917, 1124.

ALJ Robinson also noted medical evidence in the record that contradicted any back pain limitations. After an appointment in May 2012, one of Plaintiff's medical providers noted that she left the office at a "very fast walk" with no limp. *Id.* at 821, 918. In September 2014, another provider noted that Plaintiff was able to pick up her 21-month-old child "weighing about 30 pounds" off the floor while sitting on the exam table without wincing. *Id.* at 918, 1151. Between March and June 2015, her providers repeatedly noted that she had a normal, non-antalgic gait, normal strength, and normal sensation. *See id.* at 917, 1185-86, 1189, 1193, 1197.

Plaintiff challenges the ALJ's reasoning here by pointing to places in the medical record that mention ongoing ankle and back pain. *See* Pl. Op. Br. at 15-16. At most, this shows an ambiguity in the evidence, which the ALJ was entitled to resolve. *See Andrews*, 53 F.3d at 1039. Plaintiff has not shown that the ALJ's resolution of this ambiguity was irrational, and the Court therefore finds that ALJ Robinson did not err in rejecting Dr. Staker's opinions because they were contradicted by the medical record. *See Thomas*, 278 F.3d at 954.

2. The ALJ Erred in Rejecting Dr. Staker's Opinions For Relying Too Heavily on Plaintiff's Subjective Pain Complaints

The ALJ next reasoned that Dr. Staker's opinions relied too heavily on Plaintiff's subjective pain complaints, which the ALJ previously found not credible. *See* AR at 922-23. ALJ Robinson determined that Dr. Staker's lifting restriction was "presumably due to back and left foot pain," but noted that Plaintiff's pain complaints were inconsistent with the objective medical evidence and undercut by Plaintiff's drug-seeking behavior. *See id.* The ALJ erred in rejecting Dr. Staker's opinions on this basis.

An ALJ may reject a doctor's opinions when they are too heavily based on a claimant's

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 12

subjective self-reports, but "when an opinion is not more heavily based on a patient's self-report than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). While Dr. Staker's opinions were necessarily based in part on Plaintiff's subjective self-reports (as pain is, after all, a subjective symptom), they were also based on Dr. Staker's examination and review of medical images. *See* AR at 826-28. The Court thus cannot agree that Dr. Staker's opinions were based too heavily on Plaintiff's self-report, and the ALJ therefore erred in rejecting Dr. Staker's opinions on this basis.

3. The ALJ Did Not Err in Finding That Dr. Staker's Opinions Were Contradicted by Plaintiff's Daily Activities

ALJ Robinson further rejected Dr. Staker's opinions because they were contradicted by Plaintiff's daily activities. *See id.* at 923. This is a specific and legitimate reason to reject a doctor's opinions. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding an ALJ's rejection of a medical opinion where it was contradicted by the claimant's activities). The ALJ specifically explained that Plaintiff's ability to care for her child, which "required her to lift at least 30 pounds throughout the day," contradicted Dr. Staker's substantial work limitation opinions. *See* AR at 921, 923, 942-43, 951, 959-60. The ALJ reasonably interpreted the evidence, and thus did not err in rejecting Dr. Staker's opinions because they were contradicted by Plaintiff's daily activities.

4. The ALJ Did Not Err in Rejecting Dr. Staker's Opinions as Internally Inconsistent

An ALJ may reasonably reject a doctor's opinions when they are internally inconsistent. *See Tommasetti*, 533 F.3d at 1041. The ALJ found that Dr. Staker's opinions were internally inconsistent for two reasons. First, Dr. Staker stated that Plaintiff could not work, but also stated that she could participate in training and vocational services. *See id.* at 828-29, 923. Second, Dr.

ORDER AFFIRMING DEFENDANT'S
DENIAL OF BENEFITS - 13

Staker stated that Plaintiff's limitations were permanent, but indicated that her symptoms would improve as she recovered from her ankle fusion surgery. *See id.*

Neither of the inconsistencies ALJ Robinson identified is a strong reason for rejecting Dr. Staker's opinions. But they are both rational interpretations of the evidence, and the ALJ reasonably discounted the value of Dr. Staker's opinions based on their inconsistency. *See* 20 C.F.R. §§ 404.1527(b)(3)-(4), 416.927(b)(3)-(4) (explaining that ALJs consider how well an opinion is explained, and its consistency in weighing that opinion). The ALJ therefore did not err in rejecting Dr. Staker's opinions because of their internal inconsistencies.

### 5. The ALJ's Errors Were Harmless

As with her treatment of the other doctors' opinions, ALJ Robinson did not harmfully err in rejecting Dr. Staker's opinions. *See supra* Part III.A.3. The ALJ gave valid reasons for rejecting Dr. Staker's opinions, and her inclusion of invalid reasons was inconsequential to the ultimate outcome here. *See Carmickle*, 533 F.3d at 1162-63. Thus, any error was harmless.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 30th day of July, 2018.

ROBERT J. BRYAN
United States District Judge